IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>MICHAEL ASUMDA | Criminal Action No.<br><br>1:17-CR-118-01-MLB |

### Government's Sentencing Memorandum

The United States of America, by Theodore S. Hertzberg, United States Attorney, and Chloe Cobb Smith and Michael Herskowitz, Assistant United States Attorneys for the Northern District of Georgia, respectfully submit this Sentencing Memorandum in advance of the June 29, 2026, sentencing hearing for the Defendant, Michael Asumda ("Asumda").

## 1. Background

### A. Introduction and Procedural History

Asumda was charged on March 28, 2017, in a 17-count indictment with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. §§ 1344 and 1349 (Count 1), Bank Fraud in violation of 18 U.S.C. §§ 1344 and 2 (Counts 2-9), and False Statement to a Federally Insured Institution in violation of 18 U.S.C. §§ 1014 and 2 (Counts 10-17). (Doc. 1).

On February 23, 2026, Asumda pleaded guilty to Count 1 of the indictment in a negotiated plea agreement with the United States. (Doc. 186-1). As part of the negotiated plea, the United States agreed to recommend the low end of the

adjusted Guidelines range and a period of supervised release following incarceration. (Doc. 186-1, ¶ 19). The Government now recommends a sentence of 63 months' imprisonment, which is at the low end of Asumda's applicable Guidelines range of 63 to 78 months, five years of supervised release, and restitution in the amount of $1,967,160.03. The only outstanding objection is whether Asumda should receive a four-level increase for aggravating role under the Guidelines. (PSR, ¶ 51).

### B. Offense Conduct

This case involves a mortgage fraud scheme that began in or about 2004 and continued to at least 2012. (Doc. 1, at 1). Asumda and the other conspirators conducted a sophisticated scheme that involved purchasing properties in the Peoplestown neighborhood of southwest Atlanta and, shortly thereafter, "flipping" the same property based on an inflated or incestuous appraisal. (PSR, ¶¶ 9, 10). To conduct the scheme, the conspirators recruited straw buyers, flip straw buyers, falsified loan applications and supporting documents (including Internal Revenue Service W-2 Forms, pay stubs, and bank statements) and coordinated the use of appraisers, real estate agents, mortgage brokers, and other industry professionals. (*Id.* ¶ 10). The conspirators include the four individuals named in the Indictment (Asumda, Thaddeus Ugha, George Hayford, and Pino Ude) as well as two other individuals who were separately charged by a former Assistant United States Attorney ("AUSA"), Chinedum Oli and Chiedu "George" Chukwuka. Oli was charged in September 2012 and Chukwuka was charged in December 2015.

Asumda used his first-hand knowledge of and connections in the real estate industry to organize this fraudulent scheme. He was a licensed mortgage broker and the owner of Liberty Funding & Investments, Inc. (PSR, ¶¶ 6(c)(1), 12).[1] He had also previously been employed as a mortgage broker and underwriter. (*Id.* ¶ 12). He used those experiences to his benefit in organizing and leading the scheme. (*Id.*).

Asumda's specific role in the purchase and sale of those homes included recruiting investors, real estate brokers, mortgage brokers, lenders, appraisers, straw buyers, and flip straw buyers to assist him in carrying out the mortgage fraud. (*Id.* ¶ 12). He was "responsible for acquiring the property and doing basic renovations in an effort to sell the property at an inflated price." (*Id.*). He also "provided false documents and recruited others to create false documents" for the straw borrowers so that banks would approve the loans. (*Id.*). Asumda also provided money to the straw buyers to either make the down payment or make some payments on the mortgage loan to avoid detection. (*Id.* ¶¶ 6(c)(xx-xxvi), 12). Finally, Asumda determined how the other conspirators would split the proceeds of their fraudulent scheme. (*Id.*). As summarized in the PSR, "[h]e exercised the highest degree of decision making authority and enjoyed the largest share of the fruits of the crime." (*Id.*).

---

[1] Asumda's objection to Paragraph 12 appears to be limited to the legal conclusion that he was a leader of the conspiracy and not the factual statements in that paragraph.

### 2. Guidelines Calculation

Relevant to the guidelines calculation, the Plea Agreement and the PSR provide that the amount of loss was more than $1,550,000 but not more than $3,500,000, resulting in a 16-level increase to Asumda's base offense level pursuant to United States Sentencing Guidelines § 2B1.1(b)(1)(I). (Doc. 186-1, ¶ 15a). The Plea Agreement and the PSR recognize that the two-level increase to Asumda's base offense level applies pursuant to § 2B1.1(b)(10)(C) since the offense otherwise involved sophisticated means and Asumda intentionally engaged in or caused the conduct constituting sophisticated means. (*Id.* ¶ 15b).

The PSR calculates the total offense level to be 26. The offense level was calculated using the base offense level of 7 under § 2B1.1(a)(1), with a 16-point increase due to loss amount under § 2B1.1(b)(1)(I), a two-point increase based on sophisticated means under § 2B1.1(b)(10)(C), a four-point increase based on Asumda's leadership role in the offense under § 3B1.1(a), and three-point decrease for acceptance of responsibility under § 3E1.1(a) and (b).

The Government agrees with the calculations in the PSR. Asumda objects to the four-point increase under § 3B1.1(a) for aggravating role. Specifically, Asumda claims that his role is neither aggravating nor mitigating, that the leaders of the conspiracy were Oli and Chukwuka, and that his conduct is effectively the same as Hayford and Ude. But Asumda was the organizer and leader of the scheme. He had a key decision-making and recruitment role in the conspiracy as demonstrated by the facts in the PSR, which the Court can consider because Asumda did not object to them. Moreover, regarding the comparison to

other conspirators, as further discussed in Section 3(D) below, both Oli and Chukwuka's PSRs recommended the same four level increase for aggravated role[2] and Hayford and Ude were involved in fewer transactions and did not have the same organizing role as Asumda.

### A. Asumda's Role was Aggravating Under § 3B1.1(a)

Section 3B1.1(a) provides, "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." The application notes contain helpful commentary on the type of factors that are relevant in determining whether the defendant had an aggravating role. Specifically, Note 4 provides:

> Factors the court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. 3B1.1, cmt. n.4. "There is no requirement that all of these factors must be present." *United States v. Horn*, 129 F.4th 1275, 1294 (11th Cir. 2025). Additionally, multiple people can qualify as a leader or organizer of the criminal activity. *Id.*

---

[2] Oli did not object to the aggravated role enhancement in his PSR. Chukwuka objected and stated that he should only receive a two-level aggravating role enhancement. It is not clear if Judge Batten applied a four-level or two-level role enhancement at sentencing. The undersigned AUSAs did not handle those sentencings but became involved in the case for the Ugha trial.

(citing U.S.S.G. § 3B1.1, cmt. n.4). "In many of the cases where [the Eleventh Circuit has] affirmed a finding that a defendant played a leadership or organizational role under U.S.S.G. § 3B1.1(a), there was evidence that the defendant had recruited participants, had instructed participants, or had wielded decision-making authority." *United States v. Caraballo*, 595 F.3d 1214, 1231 (11th Cir. 2010).

Asumda was the organizer and leader of this fraudulent scheme and the Court should apply the four-level increase under § 3B1.1. Asumda used his institutional knowledge of the real estate industry and his connections therein to orchestrate the offense. He actively recruited participants at every stage of the scheme: from the straw buyers to the companies that provided fake W2s to the other conspirators, such as Ude who he used as his mortgage broker. Asumda was heavily involved in the fraudulent sales associated with each of the eight properties specifically charged in the Indictment, which resulted in a $1,967,160.03 loss to victim lenders, and had significant control and authority over the other conspirators. This is supported by the unobjected to facts in the PSR that describe Asumda's activity related to each sale. (PSR, ¶ 6).

According to the PSR, Asumda recruited the owners of different companies to pose as the employers of the straw buyers. (*Id.* ¶ 6(c)(viii) and (xiii)). He also recruited straw buyers and then prepared fake paystubs, W-2s, leases, and other supporting documentation before submitting loan applications for those buyers. (*Id.* ¶ 6(c)(xviii, xxiv, xxix, xxxii, xxxix). In one instance (32 Weyman), the flip straw buyer used Asumda's address on his documents because he did not have a

Georgia driver's license. (*Id.*). Asumda directed other conspirators to create fake documents and to submit fraudulent loan applications (*id.* ¶ 6(c)(xxix, xxxiv, li)). Asumda also provided straw buyers with the earnest money and cash due from borrower at closing. (*Id.* ¶ 6(c)(xxxvi)). Relevant to the § 3B1.1 factors, Asumda was the key decision-maker in the fraudulent sales, he recruited participants in the criminal scheme, and he had control over the other conspirators.

The other conspirators also identified Asumda as having a key decision-making and recruitment role in the conspiracy. According to Chukwuka, Asumda was the "money maker." (*Id.* ¶ 23). Asumda was the main person who did the loans for Chukwuka and Chukwuka estimated that Asumda was involved in 99% of Chukwuka's fraudulent deals. (*Id.*). Asumda had connections to mortgage brokers, appraisers, and buyers who participated in the mortgage fraud. (*Id.*). Chukwuka described Ude as "*one of Asumda's* mortgage brokers" who would submit false loan application information and documents for "*Asumda's* real estate deals." (*Id.*). Chukwuka explained that Oli also used Asumda to make fraudulent loans and that Asumda used Ugha as a real estate agent on "his (*Asumda's*) deals." (*Id.*).

According to Oli, Asumda created fake documents for the real estate transactions, including fake pay stubs, W-2s, verification of deposits, employment verifications, and tax returns. (*Id.* ¶ 20). Asumda and Chukwuka taught Oli how to complete a loan application and Oli began to fill out loan applications for straw buyers. (*Id.* ¶ 21).

According to Ude, Asumda brought several deals to Ude that Ude initially rejected because he was not comfortable with the deals; however, Ude eventually changed his mind because he needed money. (*Id.* ¶ 36). Asumda then started to bring completely packaged deals to Ude. (*Id.*). The deals already included the completed loan application and supporting documents such as bank statements, pay stubs, W-2s, and leases. (*Id.*). Asumda told Ude that he falsified information on the mortgage applications and made false supporting documentation, including bank statements that he edited using specialized software. (*Id.* ¶ 37). Asumda also had contacts at the banks that provided the verification of deposits for Asumda's buyers. (*Id.* ¶ 38). Asumda purchased 50 acres and set up a business in Ghana using his proceeds from the criminal scheme. (*Id.* ¶ 42).

The four-level increase under § 3B1.1 applies to Asumda due to his role in the scheme as shown by the specific actions he took in each of the indicted sales and described by his co-conspirators. He used his knowledge and connections in the real estate industry to organize the scheme; he recruited co-conspirators, straw buyers, and companies to falsely verify employment; he created fake documents or directed others to create fake documents to trick the banks into approving the mortgage; he provided the upfront money needed to make the sales; and, he decided how to cut the proceeds among the conspirators. Asumda was the organizer and leader of the criminal activity and the criminal activity involved five or more participants or was otherwise extensive as contemplated under § 3B1.1.

### 3. Application of the 18 U.S.C. § 3553(a) Factors

At sentencing, the Court must first calculate the applicable Guidelines range and then weigh the § 3553(a) factors in calculating the appropriate sentence. Section 3553(a) requires district courts to consider the following factors in imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect (A) the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to provide general deterrence; (C) to provide specific deterrence; and (D) to provide the defendant with appropriate rehabilitation options; (3) the kinds of sentences available; (4) the advisory Guidelines range; (5) the Guidelines' policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. 18 U.S.C. § 3553(a)(1)–(7). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted).

A thorough consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence for Asumda is one within his advisory Guideline range of 63 months. Specifically, the nature and circumstances of the offense and history and characteristics of Asumda, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, the need to afford specific and general

deterrence, and the need to avoid unwarranted sentence disparities support a Guidelines sentence of 63 months.

### A. Nature and Circumstances of the Offense and History and Characteristics of Asumda

As part of Asumda's mortgage fraud scheme, between August 2007 and September 2008, Asumda was personally involved in the sale of eight properties that resulted in a loss to the victim lenders of $1,967,160.03. Asumda was the organizer and leader of this scheme. The scheme was designed by Asumda and others who worked in the real estate market to exploit the vulnerabilities in the mortgage lending process at the expense of the victims and the Peoplestown community in southwest Atlanta. It was motivated by pure greed. The scheme was sophisticated, coordinated, and calculated to evade detection, which allowed the conspirators to gain maximum payouts while leaving foreclosed homes to deteriorate and the community to suffer.

The Government recognizes that Asumda is 66 years old. However, Asumda fled to Ghana in 2016 to avoid being held responsible for his actions. Before he fled, Asumda told co-conspirator Ugha that, after Chukwuka was indicted on February 17, 2015, Chukwuka showed Asumda a list of properties that Chukwuka was charged with and copies of checks between Chukwuka and Asumda. (PSR ¶ 30 (Clarification-Government)). Ugha told federal agents that Asumda believed Oli, who was indicted on September 25, 2012, informed authorities about Chukwuka and Chukwuka informed authorities about everyone else involved in the scheme. *Id.* Therefore, even though Asumda was

not indicted until March 28, 2017, he was motivated to flee in 2016 due to the impending charges.

Federal agents attempted to contact Asumda following the indictment; however, Asumda was not extradited back to the United States until 2025.[3] Asumda is primarily responsible for the delay in his punishment. A number of his co-conspirators were arrested and have already served their time. Asumda chose to flee. He should not receive a benefit from the delay he is primarily responsible for causing by having the Court give undue weight to his age when the other § 3553(a) factors strongly support a Guidelines sentence.

### B. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment for the Offense

Mortgage fraud is a serious crime that exposes lenders to millions of dollars in losses and negatively impacts communities through foreclosures. Additionally, the scheme was executed during the 2008 mortgage crisis that sent the economy into a deep recession and weakened people's trust in the housing market. The scheme was motivated by pure greed: the conspirators gained over a million dollars while wreaking havoc on the Peoplestown neighborhood by flooding it with overpriced, uninhabited, run-down houses. A Guidelines sentence of 63

---

[3] Asumda's prior counsel actively reached out to the Government in 2020 to try to negotiate Asumda's return. However, after Asumda was informed of the proposed Sentencing Guidelines, the communications stopped and the Government was forced to proceed with the formal process of extradition.

11

months would appropriately reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

**C. The Need to Afford Adequate General and Specific Deterrence**

A Guideline sentence of 63 months would deter Asumda from engaging in similar criminal conduct in the future. Asumda is 66 years old and does not have prior criminal history. However, he was able to avoid punishment for his crimes for nearly a decade after he was indicted and, in order to prevent any further criminal activity, should be subjected to a serious sentence. Additionally, given the damaging effect mortgage fraud has on particular neighborhoods and the community at large, it is imperative that he receive a sentence that deters others from engaging in similar criminal conduct.

**D. The Need to Avoid Unwarranted Sentence Disparities**

The sentences of Asumda's co-conspirators who were charged in the same Indictment are:

- Thaddeus Ugha was found guilty at trial and sentenced to 40 months imprisonment followed by three years of supervised release.[4]

- Pino Ude pleaded guilty and was sentenced to 18 months imprisonment followed by three years of supervised release. Ude testified at Ugha's trial.

---

[4] The AUSAs submitting this Sentencing Memorandum, Michael Herskowitz and Chloe Cobb Smith, tried the Ugha case while AUSA Smith was a certified legal law student extern at the U.S. Attorney's Office.

- George Hayford pleaded guilty and was sentenced to 18 months imprisonment followed by three years of supervised release.

Asumda was the leader and organizer of the sales charged in the Indictment and a higher sentence than the others charged is appropriate. Asumda used his connections and knowledge of the real estate industry to orchestrate the scheme. He used Ugha, Ude, and Hayford to effectuate portions of *his* plans while the others played much less significant roles. Ugha was Asumda's main real estate agent. (PSR ¶ 13). He provided the purchase and sale agreements for the properties, allowed Asumda to use his business for false employment, and provided rent verification for the straw buyers. (*Id.*). As Chukwuka described, Ugha worked with Asumda on *Asumda's* deals. (*Id.* ¶ 23). As a licensed mortgage broker, Ude submitted loan packets to lenders and underwriters at Asumda's request. (*Id.* ¶¶ 15, 36). Chukwuka described Ude as "one of Asumda's mortgage brokers who knowingly submitted false loan application information and fake documents to mortgage lenders for *Asumda's* real estate deals." (*Id.* ¶ 23). Hayford recruited straw buyers for Asumda, including Hayford's wife. (*Id.* ¶ 14). He did not have any other experience or role in the real estate industry that contributed to the effectuation of this scheme. Hayford, Ude, and Ugha played important roles in carrying out the mortgage fraud, but they were ultimately carrying out Asumda's plans.

A sentence of 63 months also avoids unwarranted sentence disparities between Asumda compared to Chukwuka and Oli. Chukwuka owned a real estate business that he utilized to commit fraud. (*Id.* ¶¶ 23, 29, 33). He pleaded

guilty and was sentenced to 108 months of imprisonment followed by five years of supervised release. (*Id.* at 2). He was charged and pled closer to the time of the offense and his restitution order of $5,868,243.80 is indicative of the fact that the Government was able to connect more homes to his fraudulent scheme. (*Id.*). His sentence was later reduced to 60 months. (*Id.*). Oli pleaded guilty and was sentenced to 60 months of imprisonment followed by five years of supervised release. (*Id.*). His sentence was later reduced to 48 months. (*Id.*). He was ordered to pay $4,373,281.63 in restitution. (*Id.*). Oli and Chukwuka engaged in essentially the same scheme as Asumda, but were connected to more fraudulent sales as indicated by their restitution amounts and, therefore, were initially subject to a much higher Guidelines range. However, their sentences were reduced after testifying in Ugha's trial.

## Conclusion

Based on the foregoing, the Government respectfully requests that the Court overrule Asumda's objection to the application of § 3B1.1(a) and impose a Guidelines sentence of 63 months in custody, five years of supervised release, and restitution in the amount of $1,967,160.03.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

/s/CHLOE COBB SMITH
    *Assistant United States Attorney*
Georgia Bar No. 430611
Chloe.Smith@usdoj.gov

/s/MICHAEL V. HERSKOWITZ
    *Assistant United States Attorney*
Georgia Bar No. 349515
Michael.Herskowitz@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

> Michael Tyler Ross
> The Law Office of Michael Ross, LLC
> 301 Washington Avenue
> Marietta, GA 30060
> 770-722-3661
> Email: mtrosslaw@gmail.com

June 22, 2026

> /s/ CHLOE COBB SMITH
> CHLOE COBB SMITH
> *Assistant United States Attorney*